19 F.3d 1434
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Lewis Kenneth BILLUPS, Jr., Defendant-Appellant.
 No. 93-6215.
 United States Court of Appeals, Sixth Circuit.
 March 4, 1994.
 
 Before: MARTIN and BATCHELDER, Circuit Judges; and HULL, District Judge.*
 PER CURIAM.
 
 
 1
 Defendant-Appellant Lewis Kenneth Billups, Jr. appeals the sentence imposed when he pleaded guilty to making interstate threatening phone calls in violation of 18 U.S.C. Sec. 875. The district court sentenced Mr. Billups to twelve months imprisonment, three years supervised release and a $10,000 fine, to be paid by the end of the term of supervised release. For the reasons set forth below, we affirm.
 
 
 2
 * Lewis Billups was arrested on March 21, 1993 in Lexington, Kentucky for making threatening phone calls on March 18, 1993, from Orlando, Florida to Ms. Jenny Chapman in Lexington, Kentucky, threatening to break the knees of Jenny's brother, professional basketball player Rex Chapman. Billups is a former professional football player for the Cincinnati Bengals and Green Bay Packers whom Ms. Chapman had dated off and on over a period of approximately three years. By all accounts theirs was an extremely rocky relationship.
 
 
 3
 During one of Ms. Chapman's and Billups's breakups, Ms. Chapman dated James Blackmon, a former University of Kentucky basketball player. Ms. Chapman testified that Billups threatened Blackmon.[1] Shortly thereafter, Billups and two friends confronted Blackmon in a bar and one of Billups's friends hit Blackmon over the head with a beer bottle. Blackmon was hospitalized and received $3,000 worth of plastic surgery. Billups also threatened Randy Wyatt when he became aware that Randy was dating Jenny.[2] The record indicates a long history of violent behavior by Billups.
 
 
 4
 In the middle of March 1993, Billups began making harassing phone calls to Ms. Chapman. Billups alleges that on or about March 14, 1993, Jenny's father, Wayne Chapman, called him and threatened to kill him if he did not stay away from Jenny. During the next few days Jenny Chapman recorded several telephone conversations with Billups. During one of the conversations, Billups told Jenny that if she ever spoke to another man he would break her brother Rex Chapman's knees so that he would never play professional basketball again or likely never walk again.
 
 
 5
 After flying to Lexington, Billups contacted Jenny on March 21, 1993, and asked to meet with her. Billups was met instead by the FBI and arrested. At the time of the arrest, Billups was in possession of a pair of aluminum "brass" knuckles. Billups pleaded guilty to making threatening telephone communications. He was sentenced to twelve months imprisonment, three years supervised release and a $10,000 fine to be paid by the end of the period of supervised release. This appeal followed.
 
 II
 A. THE FINE IMPOSED
 
 6
 Billups's first contention on appeal is that the $10,000 fine was imposed in violation of law. Billups argues that Sec. 5E1.2 of the United States Sentencing Guidelines violates due process, that the fine should not have been imposed without prior notice, that a fine may not be imposed without express consideration by the trial court of the factors set out in 18 U.S.C. Sec. 3572 and U.S.S.G. Sec. 5E1.2(d), and that the finding that Billups could pay a fine is clearly erroneous.
 
 
 7
 1. U.S.S.G. Sec. 5E1.2 Does Not Violate Due Process
 
 
 8
 Billups contends that U.S.S.G. Sec. 5E1.2 violates the Due Process Clause of the Fifth Amendment since it mandates a fine in all cases while 18 U.S.C. Sec. 3571 makes a fine optional and thus, Sec. 5E1.2 exceeds the statutory authorization of Sec. 3571. But Sec. 5E1.2(a) clearly states, "The Court shall impose a fine in all cases, except where the defendant establishes that he is unable to pay and is not likely to become able to pay any fine." And Sec. 5E1.2(f) further provides that if a defendant establishes that payment of a fine would unduly burden his dependents, the court may waive the fine. Clearly the Guidelines do not mandate a fine in all cases. Those demonstrating an inability to pay a fine will not be sentenced to pay a fine. This is not an unqualified mandatory fine and it does not exceed the statutory authority of 18 U.S.C. Sec. 3571.
 
 2. Notice of the Fine
 
 9
 Billups argues that because the presentence report indicated his uncertain finances and the probation officer's opinion that Billups "would not be able to pay a substantial fine at this time," the district court erred in imposing a fine without giving him prior notice. Billups bolsters his argument by pointing out that he was appointed free legal counsel under the Criminal Justice Act and claims that he "implicitly objected" when the court imposed the fine at the sentencing hearing.
 
 
 10
 The government quite rightly responds that the presentence report did not (and could not) state that no fine would be imposed; rather the report indicates that due to Billups's indebtedness and the uncompleted sale of one of his homes, the probation officer was unable to determine his net worth, and opines that Billups could not immediately pay a substantial fine. The revised presentence report indicates that Billups has $149,000 equity in a home valued at $360,000; jointly owns another residence worth $120,000 with $60,000 equity; owns a third residence, purchased in March of 1992 for $1.6 million, with a pending sale to Shaquille O'Neal of the NBA's Orlando Magic for almost $1.3 million (the proceeds to be held in escrow to pay defendant's indebtedness); possesses a $1,000,000 life insurance policy with a $500,000 cash surrender value (the equity in this policy, if any, is pledged as additional security for defendant's real estate debt); and owns a $27,000 Jeep Cherokee that is fully paid for and $55,000 worth of jewelry. The report also shows that Billups was paid $354,535.70 by the Green Bay Packers for the 1992 season and noted that Billups is only 30 years old with no health problems and is just 13 credits away from obtaining his college degree.
 
 
 11
 We hold that the difficulty in precisely determining Billups's net worth does not preclude the imposition of a fine. The presentence report indicated only that a substantial fine could not be paid immediately. The fine imposed is not inconsistent with this finding. The Sentencing Guidelines clearly place on Billups the burden of demonstrating not only his current inability to pay any fine, but the likelihood that he would not be able to pay any fine in the future. Billups was thus on notice that a fine might still be imposed and it was his duty to offer evidence of his inability to pay. At sentencing, Billups neither objected to the imposition of the fine nor offered any evidence regarding ability to pay; instead, he relies on his "implicit objection" to the fine. We hold that Billups had proper notice that a fine might be imposed.
 
 
 12
 Nor is Billups aided by United States v. Blanchard, No. 92-1723, 92-1724, 1993 WL 439814 (6th Cir. Nov. 2, 1993), which he cites (at oral argument). In that case, under similar circumstances, this Court stated, "The presentence report concluded that defendant was not then able to pay a fine, but it made no conclusion regarding defendant's future ability to pay. Therefore, when there was no proof by defendant on his likelihood to regain his earning capacity, the district court had the duty to impose some fine." Id. at * 4. Similarly, in this case the presentence report contained no conclusions about Billups's future ability to pay a fine; it merely opined that Billups's prospects for returning to professional football looked bleak, but offered no opinion about his earning capacity in light of his nearly completed college education. The district court explicitly stated that it assumed Billups would go back to football and Billups offered no concrete evidence to the contrary.[3] We hold that Billups was on notice that a fine might be imposed, and we affirm the judgment that Billups pay the fine since it is within the range set by the Guidelines, and because, in light of the financial information contained in the presentence report, the fine is not substantial, it is payable over a considerable period of time, and it is consistent with the findings of the presentence report.[4]
 
 
 13
 3. Factors in 18 U.S.C. Sec. 3572 and U.S.S.G. Sec. 5E1.2(d)
 
 
 14
 Billups contends that the district court did not properly consider the factors required by statute in imposing his fine. The government argues that while the court must consider the factors mandated by statute, it is not required to make specific findings on the record as to why the fine was imposed.
 
 
 15
 While the district court did not articulate any specific reasons for imposing the fine other than that it was "appropriate" and that it assumed Billups would play football again, it is clear from the transcript of the sentencing hearing that the court explicitly considered all of the factors which 18 U.S.C. Sec. 3553 requires the court to consider in imposing a sentence and was well aware of all of the information, including Billups's income, earning capacity and financial resources, contained in the presentence report. At least by inference, the court considered all of that information. See Blanchard at * 4. Under 18 U.S.C. Sec. 3572(a)(1) and (2), the court is required to "consider" defendant's "income, earning capacity, and financial resources," and "the burden that the fine will impose upon" him. U.S.S.G. Sec. 5E1.2(d) requires the court to consider "any evidence presented as to the defendant's ability to pay the fine (including the ability to pay over a period of time) in light of his earning capacity and financial resources" and "the burden that the fine places on the defendant and his dependents." Neither the statutes nor the applicable Guidelines require that the reasons for imposing a fine be articulated on the record and we decline to add such a requirement, particularly where the defendant has failed to present any evidence whatsoever of inability to pay the fine and there is nothing in the presentence report that establishes that having to pay a $10,000 fine over three and one half (3 1/2) years would place an unreasonable burden on Billups.
 
 4. Ability to Pay Fine
 
 16
 Billups contends that the district court's finding that he would be able to pay a $10,000 fine is clearly erroneous. Billups failed to explicitly object at sentencing and failed to present evidence of his inability to pay a fine. If a defendant fails to object to an error at sentencing, he waives his right to assert the error on appeal. United States v. Lewis, 991 F.2d 322, 324 (6th Cir.1993). This Court may review an error to which no objection is made only if it constitutes "plain error" that affects the substantial rights of the defendant. Fed.R.Crim.P. 52(b); United States v. Fountain, 2 F.3d 656, 669-70 (6th Cir.1993).
 
 
 17
 In this case, the presentence report provides a long list of assets belonging to Billups. It also indicates that Billups has a strong future earning capacity. It is clear that the district court did not commit error and certainly not plain error. Accordingly, the district court's finding that Billups was able to pay a $10,000 fine over a period of 3 1/2 years must be affirmed.
 
 B. MITIGATION UNDER U.S.S.G. Sec. 5K2.10
 
 18
 Finally, Billups argues that the district court erred in refusing to grant him a downward departure due to provocation by the victim under U.S.S.G. Sec. 5K2.10. Billups contends that he was entitled to the downward departure since Mr. Chapman's threat to kill him if he did not stay away from Jenny and Jenny's "on-again, off-again" behavior provoked him into making threats.
 
 
 19
 First, it must be noted that the knees that Billups threatened to break were Rex Chapman's and Billups does not assert that Rex did anything to provoke the threats. But even if Jenny is considered the victim, her actions cannot be considered a provocation. Under U.S.S.G. Sec. 5K2.10, this Court must consider five factors in determining whether a victim provoked the offense: the size and strength of the victim; the persistence of the victim's conduct and any efforts by the defendant to prevent confrontation; the danger perceived by the defendant; the danger actually presented to the defendant by the victim; and any conduct by the victim that contributed to the danger presented. U.S.S.G. Sec. 5K2.10.
 
 
 20
 Billups, a former professional football player, certainly had no fear of Jenny's size and strength. Billups did not attempt to avoid confrontation but rather instigated the telephone confrontation during which he made the threats. Jenny's actions presented neither a perceived nor an actual danger to Billups, and he does not claim to the contrary. And while Jenny's "on-again, off-again" behavior may have been annoying to Billups, it certainly did not contribute to the danger presented in their interactions. Departures under Sec. 5K2.10 are generally reserved for cases of significant provocation such as those found in battered women syndrome retaliation. See United States v. Whitetail, 956 F.2d 857, 864 (8th Cir.1992). Jenny's actions were not sufficient provocation to warrant a downward departure. The district court correctly denied Billups a downward departure for victim provocation.
 
 III
 
 21
 For the foregoing reasons, defendant's sentence, including the imposition of a $10,000 fine, is AFFIRMED.
 
 
 
 *
 The Honorable Thomas G. Hull, United States District Judge for the Eastern District of Tennessee, sitting by designation
 
 
 [1]
 Mr. Billups has had repeated trouble with the law. In 1987, Billups was charged with severely beating his then-girlfriend Tracey Fair. Although the criminal charges were dismissed, Ms. Fair pursued a civil action against Billups; Billups ultimately paid Ms. Fair $30,000 in settlement of her damages. Fair testified that she dropped the charges because Billups threatened to pay someone to finish the job and take a razor blade to her face if she had him arrested or put in jail. Fair required six plastic surgeries, including reconstructing her nose with bones from her skull and rib, as a result of the beating. In October 1992, Billups was accused of sexual battery by Michelle Sokol. Ms. Sokol declined to press criminal charges. In early December 1992, Billups was arrested for driving under the influence and resisting an officer. These charges are still pending in Florida. Later in December Madelyn Mitchell instituted charges that Billups sexually assaulted her, videotaped the encounter, and then tried to extort money from Mitchell and her husband
 
 
 [2]
 At Billups's detention hearing Jenny Chapman, James Blackmon, Tracey Fair and Randy Wyatt all testified that they feared Billups
 
 
 [3]
 We decline to take judicial notice of Billup's claim that "[t]ime has a way of slowing defensive backs with such certainty that the court might take judicial notice of the fact." Brief of Appellant at 10. Rule 201 of the Federal Rules of Evidence states, "[a] judicially noticed fact must be one not subject to dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Even if this were subject to being judicially noticed, one only need look as far as Ronnie Lott of the New York Jets to determine that a defensive back may be effective into his late 30's. Billups is only 30
 
 
 [4]
 Blanchard also rejected the argument that a defendant's having appointed counsel establishes inability to pay a fine, noting that the standard for requiring a defendant to pay counsel out of his funds is different from the standard for imposing fines. Blanchard at * 5